IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| JOHN STRONG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; <br><br> Plaintiff, <br><br> vs. <br><br> LENDINGCLUB CORPORATION, <br><br> Defendant, | 2:22-CV-00932-CRE |

## **MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I. INTRODUCTION

This civil action was initiated in the Court of Common Pleas of Allegheny, Pennsylvania and removed to this Court by Defendant LendingClub Corporation ("LendingClub"). In this action, Plaintiff John Strong alleges that LendingClub violated the Pennsylvania Loan Interest and Protection Law, 41 Pa. Stat. Ann. § 201, *et seq*. ("LIPL"), the Pennsylvania Consumer Discount Company Act, 7 Pa. Stat. Ann. § 6201, *et seq*. ("CDCA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201, *et seq*., when it allegedly charged an impermissibly high simple annual interest rate on Plaintiff's loan. Plaintiff seeks class treatment of his claims.

Presently before the Court is LendingClub's Motion to Dismiss for Failure to State a Claim and to Compel Individual Arbitration of the Claims of Plaintiff Strong. (ECF No. 4). The

---

[1] Motions to compel arbitration are non-dispositive motions under 28 U.S.C. § 636(b). *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014).

motion is fully briefed and ripe for consideration. (ECF Nos. 5, 12, 13, 16, 17, and 21). For the reasons that follow, LendingClub's Motion to Dismiss for Failure to State a Claim and to Compel Individual Arbitration of the Claims of Plaintiff Strong (ECF No. 4) is denied without prejudice and LendingClub may refile its motion upon the completion of limited discovery related to the arbitrability of Plaintiff Strong's claims.

II.  BACKGROUND

### LendingClub's Operations

LendingClub operates an online lending platform through which it accepts loan applications. Compl. (ECF No. 1-1) at ¶¶ 16-17. After LendingClub evaluates a consumer's creditworthiness and makes an offer, it requests WebBank to issue the loan to the consumer. *Id*. at ¶ 18. Thereafter, WebBank sells the loan to LendingClub or one of its non-bank entities that LendingClub controls. *Id*. at ¶ 19. The loans issued through LendingClub's online platform are simple interest loans and most if not all the loans are high interest, with interest rates reaching up to 36% simple interest per year. *Id*. at ¶¶ 20-21. The loans also include an origination fee, which is generally a percentage of the loan's principal balance. *Id*. at ¶ 22. Origination fees are often in the hundreds to thousands of dollars. *Id*. at ¶ 23. When consumers default on a loan, LendingClub sells the loan to a debt buyer and by doing so, Plaintiff alleges that LendingClub can turn a profit even when consumers are unable to pay the high interest rates and origination fees that LendingClub charges. *Id*. at ¶¶ 24-25. When LendingClub sells a loan, it sells all rights, title and interest in and to the loans to the debt purchaser. *Id*. at ¶ 26.

### Plaintiff John Strong's Lending Club Loan

In November 2017, LendingClub issued a personal loan to Plaintiff Strong that was used for personal, family and/or household purposes. *Id*. at ¶¶ 27-28. The loan was issued in the

amount of $5,500.00, but Plaintiff Strong only received $5,170.00 of actual money because LendingClub charged and deducted a $330.00 "origination fee." *Id.* at ¶¶ 29-30.  Plaintiff Strong was also charged interest on the loan and the interest and fees were charged at an annual percentage rate of close to 36%. *Id.* at ¶¶ 31-32.  Plaintiff Strong made payments on the loan, but at a certain point he could no longer repay the loan and the loan was charged-off. *Id.* at ¶¶ 33-34.  After the loan was charged-off, LendingClub allegedly sold all rights and interests in the loan to a debt buyer, called UHG I LLC ("UHG"). *Id.* at ¶ 35.  After buying the loan, UHG attempted to collect the loan by suing Plaintiff Strong in Allegheny County Court of Common Pleas. *Id.* at ¶ 36.  Plaintiff Strong hired an attorney to defend the lawsuit and eventually UHG dismissed its case with prejudice. *Id.* at ¶¶ 36-37.

### Plaintiff Strong's against LendingClub

Plaintiff Strong contends that LendingClub and its non-bank designees are non-banks without CDCA licenses and as such, it is not authorized under any law to charge interest above the LIPL's 6% interest rate cap on any loan for which LendingClub seeks to charge interest on behalf of itself or its non-bank designees. *Id.* at ¶¶ 39-40.  Plaintiff Strong maintains that the CDCA prohibits LendingClub from charging, collecting, contracting for, or receiving interest and fees that aggregate in excess of 6% simple interest per year, yet it routinely issues loans with interest and fees that aggregate in excess of 6% simple interest per year and it charges, collects, contracts for, or received such interest and fees from Pennsylvania consumers. *Id.* at ¶¶ 41-43. Plaintiff alleges that LendingClub cannot charge, collect, contract for, or receive most of the interest and fees it charges, collects, contracts for, or received because LendingClub and its non-bank designees do not have the license to do so and that LendingClub partners with WebBank in an attempt to circumvent the CDCA and the LIPL. *Id.* at ¶¶ 44-45.  Plaintiff maintains that

although banks like WebBank may lawfully charge interest and fees at the rates and amounts charges on LendingClub's loans, LendingClub cannot take advantage of the rights granted to banks once a loan is sold, WebBank is not the true lender of the loans at issue because the loans are not made by a bank and the LendingClub/WebBank partnership is an attempt to evade Pennsylvania law. *Id.* at ¶¶ 46-48.  Plaintiff Strong alleges that these actions make loans more expensive, increase the risk of default and make the consequences of default much worse and by example, he paid more than he would have paid had LendingClub charged interest and fees at the lawful rates and amounts, his monthly payments would have been much less making it easier for him to repay the loan and decreasing the chance of his default. *Id.* at ¶¶ 49-58.

Plaintiff Strong seeks class treatment of his claims and seeks to certify the following class: "All persons who obtained a loan from LendingClub with an Allegheny County address and paid interest and fees that aggregated in excess of 6% simple interest per year within the applicable statute of limitations." *Id.* at ¶ 61.

Plaintiff Strong asserts the following claims against LendingClub:

1. A violation of the LIPL (Count I);

2. A violation of the CDCA (Count II); and

3. A violation of the UTPCPL (Count III).

LendingClub moves to dismiss and to compel arbitration of Plaintiff Strong's claims and argues that his loan is subject to an arbitration provision of an agreement.  (ECF No. 5). According to LendingClub, Plaintiff Strong applied for and obtained a loan from WebBank through LendingClub's website and to obtain this loan, he electronically signed a Borrower Agreement by checking a box indicating his electronic signature and acceptance. Def's Br. (ECF No. 5 at 7).  LendingClub asserts that this agreement, often referred to as a "clickwrap"

agreement, appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction. According to LendingClub, the Agreement included an arbitration provision in which Plaintiff Strong agreed to binding arbitration for disputes "relating to or arising out of" the Agreement. *Id*. at 8. The Arbitration provision provides as follows:

> **21. Arbitration.** RESOLUTION OF DISPUTES: I HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS MY RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND ME. I UNDERSTAND THAT I HAVE THE RIGHT TO REJECT THIS PROVISION AS PROVIDED IN PARAGRAPH (b) BELOW. . . .
>
> a. Either party to this Agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 21 (the "Arbitration Provision"), unless you opt out as provided in section 21(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or the subsequent holder (or persons claiming through or connected with us and/or the subsequent holders), on the other hand, relating to or arising out of this Agreement, any Loan Agreement and Promissory Note(s), the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of section 21(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.
>
> * * *
>
> f. . . . NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS A PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS A CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. . . .

> g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. . . .
>
> h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or LendingClub; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or Loan Agreement or Promissory Note(s) or any other promissory note(s) which you owe, or any amounts owed on such loans or notes, to any other person or entity. If any portion of this Arbitration Provision other than section 21(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section 21(f) are finally adjudicated pursuant to the last sentence of section 21(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.
>
> THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

Borrower Agreement at ¶ 21 (ECF No. 5-1 at 13-14).

The Borrower Agreement further provided that Plaintiff Strong had thirty days to opt out of the Arbitration Agreement, but according to LendingClub, Plaintiff Strong did not do so. Def's Ex. 1 (ECF No. 5-1 at 6-7). The Arbitration Agreement also expressly precluded arbitration of a class. Def's Br. (ECF No. 5 at 9).

### III. STANDARD OF REVIEW

#### a. Motion to Compel Arbitration

While LendingClub argues that the standard set forth in Federal Rule of Civil Procedure 12(b)(6) should be applied to decide this motion to compel arbitration, when determining whether a valid arbitration agreement exists, courts must initially determine whether to apply the

standard set forth in Rule 12(b)(6) or the summary judgment standard set forth in Rule 56. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771–76 (3d Cir. 2013). In so deciding, courts apply the following framework:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti*, 716 F.3d at 776 (citations omitted). "The centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 774–76). While "the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.' " *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017)).

    b. <u>Discussion</u>

LendingClub argues that because the Borrower Agreement contained an arbitration provision that Plaintiff Strong agreed to and Plaintiff Strong did not opt out of the provision to arbitrate within thirty days, that his claims must be compelled to arbitration. In so arguing, LendingClub included as an exhibit to its brief a Declaration of Paul Strack, the Lead Architect for Platform Engineering of LendingClub Bank, N.A., which is owned by LendingClub, who

testifies regarding Plaintiff Strong's purported execution of the Borrower Agreement and the arbitration provision. LendingClub further attaches an exhibit to its motion - the Borrower Agreement. Notably, the Borrower Agreement attached by LendingClub includes no specific reference to Plaintiff Strong, his loan amount, or any specific loan terms. LendingClub also includes an "exemplar" dialog screen with an electronic check box and accompanying text that it claims Plaintiff Strong "would have been presented with" as he accepted the terms of his loan. Strack Dec. (ECF No. 5-1 at ¶ 8).

Plaintiff Strong responds by advocating that "the summary judgment standard applies" here "since it is not facially apparent, from the complaint, that Strong's claims against LendingClub are subject to an enforceable arbitration agreement." Pl.'s Resp. (ECF No. 12, p. 8). Plaintiff Strong argues that LendingClub was not a party to the Borrower Agreement and that it has not produced evidence to prove the same. Pl.'s Resp. (ECF No. p. 14). In reply, LendingClub argues that it was not required to be a holder, and even if it was, LendingClub was a subsequent holder and attaches a declaration of Jeremy Carlson as evidence of the same. D's Reply (ECF No. 13, p. 2).

In the instant matter, the summary judgment standard must apply to the motion to compel arbitration because it is not apparent from the face of the complaint, nor documents relied upon in the complaint that a valid arbitration agreement exists. Additional sufficient facts have been raised to place the agreement to arbitrate in issue. It would be improper for the Court to consider this testimony without affording Plaintiff Strong the opportunity to conduct discovery as to the veracity of LendingClub's assertions. The Court cannot make the determination that as a matter of law that rely on unauthenticated documents and declarations of witnesses that are extraneous to the pleadings. This conclusion is supported by several other courts who have also concluded

testifies regarding Plaintiff Strong's purported execution of the Borrower Agreement and the arbitration provision. LendingClub further attaches an exhibit to its motion - the Borrower Agreement. Notably, the Borrower Agreement attached by LendingClub includes no specific reference to Plaintiff Strong, his loan amount, or any specific loan terms. LendingClub also includes an "exemplar" dialog screen with an electronic check box and accompanying text that it claims Plaintiff Strong "would have been presented with" as he accepted the terms of his loan. Strack Dec. (ECF No. 5-1 at ¶ 8).

Plaintiff Strong responds by advocating that "the summary judgment standard applies" here "since it is not facially apparent, from the complaint, that Strong's claims against LendingClub are subject to an enforceable arbitration agreement." Pl.'s Resp. (ECF No. 12, p. 8). Plaintiff Strong argues that LendingClub was not a party to the Borrower Agreement and that it has not produced evidence to prove the same. Pl.'s Resp. (ECF No. p. 14). In reply, LendingClub argues that it was not required to be a holder, and even if it was, LendingClub was a subsequent holder and attaches a declaration of Jeremy Carlson as evidence of the same. D's Reply (ECF No. 13, p. 2).

In the instant matter, the summary judgment standard must apply to the motion to compel arbitration because it is not apparent from the face of the complaint, nor documents relied upon in the complaint that a valid arbitration agreement exists. Additional sufficient facts have been raised to place the agreement to arbitrate in issue. It would be improper for the Court to consider this testimony without affording Plaintiff Strong the opportunity to conduct discovery as to the veracity of LendingClub's assertions. The Court cannot make the determination that as a matter of law that rely on unauthenticated documents and declarations of witnesses that are extraneous to the pleadings. This conclusion is supported by several other courts who have also concluded

that materials attached to a motion to compel arbitration should not be considered under the Rule 12(b)(6) standard. *Nicasio v. L. Offs. of Faloni & Assocs., LLC*, No. 2:16-0474 (WJM), 2016 WL 7105928 at *2 (D.N.J. Dec. 5, 2016); *Hosang v. Midland Credit Mgmt., Inc.*, No. 19CV21740BRMJAD, 2020 WL 8366284, at *3 (D.N.J. Dec. 15, 2020), report and recommendation adopted, No. 219CV21740BRMJAD, 2021 WL 307544 (D.N.J. Jan. 29, 2021); *Powell v. Midland Credit Mgmt., Inc.*, No. CV2119836KMWMJS, 2022 WL 3681257, at *4 (D.N.J. Aug. 25, 2022). "Because the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion." *Torres v. Rushmore Serv. Ctr., LLC*, No. CV189236SDWLDW, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018). *But see Liptak v. Accelerated Inventory Mgmt., LLC*, No. 2:20-CV-967, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021) (finding that a "clickwrap" arbitration agreement was enforceable as a matter of law under Rule 12(b)(6) and compelling arbitration). Therefore, the parties should be afforded the opportunity to conduct discovery to determine the arbitrability of this matter.

## IV. CONCLUSION

Based on the foregoing, LendingClub's Motion to Dismiss for Failure to State a Claim and to Compel Individual Arbitration of the Claims of Plaintiff Strong (ECF No. 4) is denied without prejudice to refile once the parties have completed limited discovery on the arbitrability of Plaintiff Strong's claims. An appropriate Order follows.

Dated: 3/22/2023

By the Court,

s/ Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF